**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Megan Torrie,<br><br>                    Plaintiff,<br><br>v.<br><br>Goodman Law Offices PC, et al.,<br><br>                    Defendants. | No. CV-13-02659-PHX-DGC<br><br>**ORDER** |

Defendants Goodman Law Offices and Clint Goodman have filed a motion for partial summary judgment. Doc. 15. The motion is fully briefed. The Court will grant Defendants' motion for partial summary judgment. Plaintiff has filed a motion to supplement her response to the motion for summary judgment. Doc. 27. The Court will deny this motion.[1]

**I.    Background.**

In 2010, Megan Torrie purchased two houses that were part of the Continental Ranch Community Association ("Association"). Doc. 16, ¶ 2.[2] The houses were located at 8619 and 8627 N. Kimball Way. *Id.* Both properties were subject to the Association's "Declaration of Covenants, Conditions and Restrictions for Continental Ranch." *Id.*

---

[1] Plaintiff's request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Unless otherwise noted, the following facts are not in dispute between the parties. *Compare* Doc. 16, ¶¶ 1-10 (Defendants' Statement of Facts), *with* Doc. 22, ¶¶ 1-10 (Plaintiff's Response).

1    These covenants require homeowners to pay a semi-annual assessment.  *Id.*, ¶ 3.  If a

2    homeowner fails to pay an assessment, the owner agrees to pay a late fee and "such

3    additional costs, fees, charges and expenditures . . . as the Association may incur in the

4    process of collecting monies due and delinquent from the Owner."  *Id.*, ¶ 9.  These

5    "additional charges" may include attorneys' fees, late charges, costs of suit, interest, and

6    collection costs.  *Id.*  The additional charges may be included in "any judgment in any

7    suit or action brought to enforce collection of delinquent assessments[.]"  *Id.*

8         Torrie failed to pay the semi-annual assessments on both properties.  *Id.*, ¶ 3.  In

9    2011, the Association retained Clint Goodman of the Goodman Law Offices to recover

10   the unpaid assessments and late fees.  *Id.*, ¶ 4.  Goodman filed two cases in Justice Court,

11   one for the unpaid fees on the 8619 property and another for the unpaid fees on the 8627

12   property.  *Id.*  Torrie failed to appear in either case.  *Id.*  The Justice Court entered default

13   judgments of $1,406.36 for the unpaid fees on the 8627 property and $1,100.58 for the

14   unpaid fees on the 8619 property.  *Id.*  The judgment for the 8627 property ("First

15   Judgment") included attorneys' fees and costs, and imposed an interest rate of ten percent

16   per annum.  Doc. 22-1 at 5.  In May of 2012, a "Satisfaction of Judgment" was filed for

17   the judgment on the unpaid fees for the 8627 property.  *Id.*, ¶ 5; Doc. 22-1 at 8.

18   Goodman claims that this was a clerical error; the Satisfaction of Judgment should have

19   been filed for the judgment on the unpaid fees for the 8619 property.  Doc. 16, ¶ 5.

20   Torrie states that she "is unaware of the details giving rise to such actions."  Doc. 22, ¶ 5.

21        The litigation for the unpaid fees continued.  On January 1, 2013, Goodman filed

22   "an action for collection, lien enforcement and foreclosure" on the 8627 property.

23   Doc. 16, ¶ 6.  When Torrie once again failed to appear, a default judgment of $3,755.36

24   was entered against her.  *Id.*, ¶ 6; Doc. 22-1 at 19.  This amount included the unpaid

25   assessments on the 8627 property, late fees, costs, and interest.  Doc. 22-1 at 19.  Torrie

26   argues that the amount also covered unpaid assessments already included in the First

27   Judgment for the 8627 property.  Doc. 22 at 4.

28        On April 24, 2013, Goodman wrote a letter to Torrie, notifying her of the

judgment and stating that she owed $3,810.36, an amount that included a charge for writing the letter.  Doc. 16, ¶ 6; Doc. 22-1 at 25.  On August 7, 2013, Torrie's lawyer sent a check for $1,500 to Goodman.  Doc. 16, ¶ 8.  Torrie's lawyer noted on the check "Assessments 2008-2013," instructed Goodman to apply the check as prescribed by A.R.S. § 33-1807(k), and requested a detailed breakdown of "any additional amounts" owed.  Doc. 22-1 at 35.  On October 31, 2013, after an additional assessment and late fee had been charged for the 8627 property, Goodman returned the check.  Doc. 16, ¶ 8; Doc. 22-1 at 38.  Goodman claims he returned it because he "was concerned that acceptance could have been deemed an accord and satisfaction."  Doc. 16, ¶ 8.  On November 11, 2013, Torrie's lawyer sent a second check for $1,500 that Goodman accepted.  *Id.*

On October 22, 2013, Torrie successfully set aside, for a defect in service, the default judgment awarded in the 2013 foreclosure action.  *Id.*, ¶ 7.  This case remains ongoing.  On February 18, 2014, the Justice Court that had issued the "Satisfaction of Judgment" in May of 2012 found the satisfaction had been entered in error.  Doc. 22-1 at 61.  The court reinstated the First Judgment for the unpaid fees on the 8627 property.  *Id.*

On December 31, 2013, Torrie filed this lawsuit.  Doc. 1.  She claims that Clint Goodman and the Goodman Law Offices ("Defendants") violated the Fair Debt Collection Practices Act in their attempts to recover her unpaid assessments and late fees. *Id.*  Defendants move for partial summary judgment on Torrie's claims.  Doc. 15.

## II.  Legal Standard.

### A.  Summary Judgment.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

1   matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a

2   party who "fails to make a showing sufficient to establish the existence of an element

3   essential to that party's case, and on which that party will bear the burden of proof at

4   trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome

5   of the suit will preclude the entry of summary judgment, and the disputed evidence must

6   be "such that a reasonable jury could return a verdict for the nonmoving party."

7   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8            **B.      Fair Debt Collection Practices Act.**

9            The Fair Debt Collection Practices Act ("FDCPA") seeks to eliminate abusive

10   debt collection practices, to ensure that debt collectors who abstain from those practices

11   are not competitively disadvantaged, and to promote consistent state action to protect

12   consumers. 15 U.S.C. § 1692(e); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*

13   *LPA*, 559 U.S. 573, 577 (2010). The FDCPA regulates interactions between consumer

14   debtors and "debt collector[s]," defined to include any person who "regularly collects . . .

15   debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A

16   lawyer regularly engaged in debt collection activity, even when that activity consists of

17   litigation, is considered a debt collector. *See Heintz v. Jenkins,* 514 U.S. 291, 299 (1995).

18   A debt collector "who fails to comply with any provision of [the FDCPA] with respect to

19   any person is liable to such person" for actual damages as well as additional damages that

20   are not to exceed $1,000. 15 U.S.C. § 1692k(a).

21            The FDCPA prohibits a wide array of abusive and unfair practices by debt

22   collectors. *Heintz*, 514 U.S. at 292-93. As relevant to this case, the FDCPA states:

23   • "A debt collector may not engage in any conduct the natural consequence
24     of which is to harass, oppress, or abuse any person in connection with the
       collection of a debt" (§ 1692d);

25   • A debt collector may not make a false representation of "the character
26     amount or legal status of any debt; or any services rendered or
       compensation which may be lawfully received by any debt collector for the
27     collection of a debt" (§ 1692e(2));

28   • A debt collector may not threaten "to take any action that cannot legally be
       taken or that is not intended to be taken" (§ 1692e(5));

- "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt" (§ 1692f); and

- A debt collector may not collect any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law" (§ 1692f(1)).

The FDCPA is a strict liability statute. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006). In deciding whether a debt collector has violated the FDCPA, courts assess the debt collector's conduct from the perspective of a hypothetical "least sophisticated debtor." *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (citing *Clark*, 460 F.3d at 1171; *Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1099-1100 (9th Cir. 1996)). For example, whether a debt collector's allegedly misleading or deceptive behavior violates § 1692e "depends on whether it is likely to deceive or mislead a hypothetical 'least sophisticated debtor.'" *Terran v. Kaplan,* 109 F.3d 1428, 1431 (9th Cir. 1997). "The objective least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id.* at 1431-32 (citation omitted). Finally, the FDCPA is a remedial statute that should be interpreted "liberally" to "protect debtors from abusive debt collection practices." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1025 (9th Cir. 2012).

**III.** **Analysis.**

**A.** **Multiple Lawsuits Over Same Debt.**

Plaintiff's primary claim is that Defendants violated the FDCPA by filing the 2013 foreclosure action for the unpaid fees on the 8627 property. Plaintiff emphasizes that this action was filed after Defendants had (1) acquired a previous judgment on the same debt and (2) had filed a Satisfaction of Judgment for that debt. Plaintiff argues that the action violated 15 U.S.C. § 1692d because it had the "natural consequence . . . to harass, oppress, or abuse" Plaintiff. Doc. 21 at 9-10; *see also* 15 U.S.C. §§ 1692e(5), 1692f ("A debt collector may not use unfair or unconscionable means [to collect a debt.]"). Plaintiff states that "the continued pursuit of litigation despite the legal bar prohibiting such

- 5 -

litigation . . . is the 'kind of abusive practice the FDCPA was intended to eliminate.'"
Doc. 21 at 10 (quoting *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F.
Supp. 2d 1, 79 (D. Mass. 2012)).

Defendants argue that the 2013 action was a legitimate lawsuit and that a "non-frivolous" lawsuit to collect a debt cannot violate the FDCPA.   Doc. 15 at 7-8.
Defendants emphasize that (1) the Justice Court initially ruled in favor of Defendants,
thereby finding that the action was not frivolous; (2) Arizona law permits a party to
pursue a collection action after judgment on a debt; and (3) the "Satisfaction of
Judgment" was erroneously filed.  *See id.*; Doc. 26 at 2-5.

The Supreme Court has noted that "we do not see how the fact that a lawsuit turns
out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that
cannot legally be taken' [under the FDCPA]."  *Heintz*, 514 U.S. at 296.  Furthermore, a
complaint violates the FDCPA only when the complaint is frivolous.  *See McCollough v.
Johnson, Rodenberg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2001) (finding that a
request for attorneys' fees violated the FDCPA when the debt collector "presented no
admissible evidence of a contract authorizing a fee award"); *McDermott*, 911 F. Supp. 2d
at 80 (finding that repetitive lawsuits did not violate the FDCPA where they were not
"frivolous" and did not misrepresent the debt); *Beattie v. D.M. Collections, Inc.*, 754 F.
Supp. 383, 393 (D. Del. 1991) (finding that threatening a lawsuit violates the FDCPA
only when the suit is "unwinnable by reason of a legal bar such as the statute of
limitations").

Plaintiff does not genuinely dispute the relevant facts, and these facts show that
the 2013 foreclosure action was not frivolous.  The submitted documents show that the
court in the 2013 foreclosure action was aware of the previous judgment, as well as the
purported "Satisfaction of Judgment," and nevertheless allowed the case to move
forward.  *See* Doc. 26-2.  Moreover, Arizona law is clear that the "election statute does
not preclude a subsequent foreclosure action after judgment on the debt[.]"  *Mid Kansas
Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 804 P.2d 1310, 1314 (Ariz.

1   1991) (citing A.R.S. § 33-722).  Finally, although Plaintiff states that she "is unaware of

2   the details giving rise to such actions" (Doc. 22, ¶ 5), the affidavits and exhibits show that

3   the "Satisfaction of Judgment" had indeed been erroneously filed for the judgment

4   regarding the 8627 property.  *See* Doc. 16-1, ¶ 5; Doc. 22-1 at 61.  Taken together, these

5   facts show that the 2013 foreclosure action was not frivolous.  Because the Court finds

6   that there is no genuine dispute as to the frivolousness of the 2013 foreclosure action, the

7   Court grants summary judgment on Plaintiff's claims regarding that action.

8       **B.     Failure to Provide Notice of Debt.**

9       Plaintiff claims that Defendants violated § 1692g by failing to respond to Torrie's

10  request on August 7, 2013 for a "detailed statement and breakdown regarding any

11  additional amounts you claim may be owed."  Doc. 21 at 13; Doc. 22-1 at 35.  Section

12  1692g states:

13          Within five days after the initial communication with a consumer in
            connection with the collection of any debt, a debt collector shall, unless the
14          following information is contained in the initial communication or the
            consumer has paid the debt, send the consumer a written notice containing
15          [detailed information about the debt].

16  *Id.*  The exhibits, however, show that Defendants' "initial communication" with Plaintiff

17  occurred before August 7, 2013.  On April 24, 2013, Defendants sent a letter to Plaintiff

18  regarding the debt and the judgment obtained on the debt.  Doc. 22-1 at 25.  This letter

19  included all of the information required by 15 U.S.C. § 1692g(a)(1)-(5).  Therefore, the

20  Court grants summary judgment on Plaintiff's claim that Defendants violated § 1692g by

21  failing to validate the debt in response to Plaintiff's letter in August.

22      **C.     Award of Post-Judgment Fees and Costs.**

23      Plaintiff claims that the First Judgment – obtained for the unpaid fees on the 8627

24  property – included "post-judgment fees and costs" that were not authorized by law or

25  contract.  Doc. 21 at 13-14.  Plaintiff argues that this violated 15 U.S.C. § 1692f(1),

26  which prohibits the "collection of any amount . . . unless such amount is expressly

27  authorized by the agreement creating the debt or permitted by law," and § 1692e(2).

28  Doc. 21 at 13-14.  The relevant agreement in this case is the Association's "Declaration

of Covenants, Conditions and Restrictions for Continental Ranch."  *See* Doc. 16, ¶ 9; *see also* Doc. 22, ¶ 9 (Plaintiff admits the "substantive reference to the CC&Rs").  This agreement states that "each Owner agrees to pay such additional costs, fees, charges and expenditures . . . as the Association may incur in the process of collection monies due and delinquent from the Owner."  Doc. 16, ¶ 9.  The agreement states that these "additional costs" include attorneys' fees, late charges, "court costs," interest, and collection costs. *Id.*  Thus, the agreement specifically authorized the "post-judgment fees and costs" that were awarded with the First Judgment.  Regardless of whether the FDCPA applies to the "lodging of a judgment" – as Defendant argues (Doc. 15 at 9) – Plaintiff's claim is without merit.  The Court grants Defendants summary judgment on Plaintiff's claim that the inclusion of these post-judgment fees and costs violated § 1692f(1) and § 1692e(2).

### D.   Misrepresentation of Amount Owed.

Plaintiff claims that Defendants – after obtaining a default judgment of $3,755.36 in the 2013 foreclosure action – misrepresented the amount owed by sending a letter stating that the amount of the debt was $3,810.36.  *See* Doc. 6 at 4; Doc. 21 at 14.  The letter, however, clarified that the increase of $55 was due to a charge for sending the letter.  Doc. 22-1 at 25.  As discussed above, the agreement between Plaintiff and the Association allowed Defendants to charge for collection costs.  *See* Doc. 16, ¶ 9.  By including a charge for sending the letter, Defendants did not violate the agreement or misrepresent the amount owed.  The Court grants Defendants summary judgment on Plaintiff's claim that Defendants misrepresented the amount owed in this letter.

### E.   Failure to Accept the $1,500 Check.

Plaintiff claims that Defendants' failure to timely accept and apply Plaintiff's $1,500 check violated § 1692h.  Doc. 21 at 11-13.  On August 7, 2013, Plaintiff mailed a letter with an enclosed check to Defendants.  Doc. 22-1 at 35.  Defendants responded on October 31, 2013, stating that they would not accept the check because they were concerned that the check was offered as a compromise for Plaintiff's entire debt.  *See* Doc. 22-1 at 38; Doc. 16, ¶ 8.  Plaintiff then resent the check on November 7, 2013,

- 8 -

clarifying that it was not intended as an offer of compromise (Doc. 22-1 at 42), and Defendants accepted the check.  Doc. 16, ¶ 8; Doc. 22, ¶ 8.

> Section 1692h states:
>
> If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

*Id.*  Defendants argue that § 1692h applies only when a debtor owes two separate debts and directs a payment to a particular debt, and does not require a debt collector to accept a payment.  Doc. 26 at 4-5.  The Court agrees.  Plaintiff does not claim that she had two separate debts at the time she sent the $1,500 check.  Defendants provide a reasonable explanation for why they did not accept the check, and they did accept it once Plaintiff made clear it would not be an accord and satisfaction.  The Court finds no genuine dispute that § 1692h applies to these facts and will grant summary judgment on Plaintiff's claim that Defendants' failure to timely accept the $1,500 check violated § 1692h.[3]

### F.      Plaintiff's Remaining Claims.

Defendants have moved for summary judgment on all of Plaintiff's claims, but have failed to address – in either their motion or their reply – three claims.  Plaintiff mentioned all three of the claims in her complaint and in her response: (1) Defendants violated § 1692e(2) or § 1692d when they reinstated the First Judgment for $1,458.86 *after* they had accepted Plaintiff's $1,500 check (Doc. 6, ¶ 37; Doc. 21 at 10); (2) Defendants violated § 1692e(2) because the First Judgment – as originally entered and as subsequently reinstated – included an unlawfully high interest rate of ten percent per year (Doc. 6, ¶ 38; Doc. 21 at 12-13); and (3) Defendants violated § 1692e(5) by failing to properly serve Plaintiff in the 2013 foreclosure action (Doc. 6, ¶ 24; Doc. 21 at 14-15).   Because Defendants have not addressed these claims, the Court will treat

---

[3] Defendants also argue that their communications with Plaintiff's attorney are not communications with the debtor and therefore the FDCPA does not apply.  Doc. 15 at 10-12.  Because the Court finds that Defendants did not violate the FDCPA in regards to the $1,500 check, the Court will not address this argument.

1    Defendants' motion as one for partial summary judgment.

2    **IV.    Motion to Supplement.**

3           On October 2, 2014, Plaintiff moved to supplement her response to include an

4    additional claim under the FDCPA.   Doc. 27.   Specifically, Plaintiff claims that

5    Defendants violated § 1692e(2) because they "falsely inflated their attorneys' fees and

6    costs in connection with the default judgment they obtained" in the 2013 foreclosure

7    action.  *Id.* at 1.  Plaintiff has submitted court documents showing that Defendants may

8    have inflated their fees and costs in connection with the 2013 foreclosure action (Doc. 27

9    at 32), but her complaint does not allege that Defendants fabricated or inflated their

10   attorneys' fees and costs.[4]   The Court, therefore, cannot treat Plaintiff's new claim as a

11   mere "supplement" to her response.  Plaintiff argues that the allegations she may make in

12   her response to Defendants' summary judgment motion "are not limited to those

13   summarized in the notice pleading complaint[.]"  *Id.* at 2.  The Court disagrees.  The only

14   claims in this case are those asserted in her complaint.  Although Plaintiff more clearly

15   explained her claims in her response than in her complaint, all of the facts underlying

16   those claims were at least indicated or mentioned in her complaint.  The Court, therefore,

17   will treat Plaintiff's motion to supplement as a motion to amend her complaint.

18          On July 11, 2014, the Court entered a Case Management Order.  Doc. 14.  This

19   order stated that the "deadline for . . . amending pleadings . . . is 60 days from the date of

20   this Order."  *Id.*  Plaintiff filed her motion to supplement on October 2, more than eighty

21   days later.  Doc. 27.  Under the Federal Rules of Civil Procedure, a case management

22   schedule "may be modified only for good cause and with the judge's consent."  Fed. R.

23   Civ. P. 16(b)(4).  Rule 16(b)(4)'s good cause standard primarily considers the diligence

24   of the party seeking the amendment.  *Johnson v. Mammoth Recreation*, *Inc.*, 975 F.2d

25   604, 609 (9th Cir. 1992).  "The district court may modify the pretrial schedule 'if it

26   cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Id.*

27
28          [4] In her Reply in Support of the Motion to Supplement, Plaintiff brings additional
     claims.   She argues that Defendants inflated their hourly rates and failed to accurately
     calculate their total costs in their request for fees and costs.  Doc. 30.

(quoting Fed. R. Civ. P. 16 Advisory Comm. Notes (1983 Am.)).

Plaintiff's motion does not address Rule 16(b)(4) or the good cause standard. Nor does it explain her lack of diligence in raising this new claim. The relevant documents supporting Plaintiff's new claim were most likely on file at Pima County's Superior Court, or at the very least in the possession of Defendants. Doc. 27 at 15. Thus, they were readily available for Plaintiff's discovery from the inception of this case. The Court concludes that Plaintiff has not shown good cause to extend the deadline for amending pleadings and will deny her request to add a new claim to this case.

**IT IS ORDERED:**

1.    Defendants' motion for partial summary judgment (Doc. 15) is **granted.**

2.    Plaintiff's motion to supplement (Doc. 27) is **denied**.

Dated this 4th day of November, 2014.

David G. Campbell
United States District Judge